UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                                                              :
MARCIA MCDONALD,                                              :
                                                              :
                                Plaintiff,                    :
                                                              :                    23-CV-06025 (JAV)
                                                              :
              -v-                                             :
                                                              :            OPINION AND ORDER
PHARNEY GROUP LLC d/b/a TARRYTOWN                             :
HALL CARE CENTER,                                             :
                                                              :
                                Defendant.                    :
                                                              :
-----------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Marcia McDonald brings this suit pursuant to Title VII of the Civil

Rights Act of 1964, 42 U.S.C.A. § 2000e ("Title VII"); the Age Discrimination in

Employment Act, 29 U.S.C.A. § 621 ("ADEA"); and the New York State Human

Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL").  ECF No. 1 at 1, 5-6.

Plaintiff has asserted a hostile work environment claim based upon her age, color,

race, and national origin, as well as a retaliation claim.  *Id.*

Before the Court is a motion for summary judgment by Defendant Pharney

Group LLC, doing business as Tarrytown Hall Care Center ("Defendant" or

"THCC"), as to all claims asserted in the complaint.  ECF No. 29.  For the following

reasons, Defendant's motion for summary judgment is **GRANTED**.

## BACKGROUND

Unless otherwise stated, the facts below are undisputed.

THCC is a skilled nursing facility in Tarrytown, New York. ECF No. 31-1 ("THCC Position Statement") at 1; ECF No. 36 ("Pl. 56.1"), ¶ 1. THCC hired Plaintiff as a nursing supervisor in August 2019. ECF No. 31-3 ("Pl. Dep.") 80:20–81:14. In January 2020, registered nurse Jennifer Mazzetti ("Nurse Mazzetti")—who has worked for THCC's corporate parent company since 2006—became Director of Nursing at THCC and thus Plaintiff's supervisor. Pl. Dep. 82:14–84:6; ECF No. 31-4 ("Mazzetti Aff."), ¶¶ 1-3.

In late January 2020, Nurse Mazzetti spoke with Plaintiff about care plan procedures, but the parties dispute the nature of that conversation. Nurse Mazzetti reports a conversation about Plaintiff's failure to assess a THCC resident, as flagged by another nurse; the importance of notifying patients' families about patient incidents; Accident and Incident report ("A&I") protocols; and related topics. ECF No. 35-1 ("Mazzetti Dep.") 51:19–52:17; ECF No. 30 ("Def. 56.1"), ¶ 14. Alternatively, Plaintiff recalls Nurse Mazzetti saying it was "not just" Plaintiff making care plan errors, as care plans "generally in" THCC were "horrible" and "not being done properly." Pl. 56.1, ¶ 14; Pl. Dep. 84:15–87:15. Notably, Plaintiff's complaint to Human Resources, filed February 8, 2020, reports this conversation differently: "On January 30, 2020 I was approached by Jennifer M[a]zzetti stating that my Incident/Accident Reports (A&Is) are not being done correctly because important documents such as updating care plans and other attachments are not included." ECF No. 35-3 ("HR Complaint"). Plaintiff also reports asking for training during that conversation. Pl. Dep. 85:17-20.

2

Between February 4 and February 7, 2020, Nurse Mazzetti prepared four Disciplinary Action Reports against Plaintiff.  ECF No. 31-5 ("DARs") at 1-4.  Where each form directs a supervisor to "[l]ist documentation attached in support of this action," all four list nothing.  *Id.*

The first report, on February 4, 2020, lists "reason for action" as Plaintiff's "[f]ailure to complete A&I, risk assessments, update care plans [and] Karelex."  *Id.* at 1.  Under "dates of previous disciplinary actions," there is a check mark next to "Verbal warning."  *Id.*  Under "action in present case," nothing is written.  Above "Employees Signature / Date," handwritten text reads: "Refused to sign."  *Id.*  Above "Supervisor's Signature / Date" and "Witness' Signature / Date" are signatures and the date "2/4/2020" or "2/4/20."  *Id.*  Below "Employee requests a copy of this document be forwarded to the Union Representative," are unselected slots next to options "Yes," "No," and "N/A."  *Id.*

The second report, on February 5, 2020, lists as its reason "Failed to notify MD/designat[ed representative about] change in resident."  *Id.* at 2.  Under "action in present case," "written warning" is checked.  *Id.*  Nurse Mazzetti signed and dated the form, and a line reading "Administrator or HR Acknowledgement" bears a signature.  *Id.*  The signature lines for employee, witness, and "Next Management Level Acknowledgment" are blank, as are the slots regarding union notification.  *Id.*

The third report, on February 6, 2020, lists as its reason "LPN reported to RN supervisor that resident Ms. [redacted] had alteration in skin integrity to sacrum. RN stated to [illegible] that she was unaware of this, however, LPN stated he told

3

her & RN MDS Coordinator was a witness.  RN failed to assess resident." *Id.* at 3. Again, "written warning" is checked, Nurse Mazzetti signed and dated as supervisor, and "Administrator or HR Acknowledgment" is signed, but the remaining fields are blank.  *Id.*  Defendant identifies the notifying LPN as Antonio Tabuzo ("Nurse Tabuzo"), who provided to Nurse Mazzetti an oral and written report that Plaintiff did not provide proper care to a patient ("Patient Doe") and did not rectify that error when alerted by Nurse Tabuzo.  Def. 56.1, ¶ 9; Mazzetti Dep. 58:22–59:5.  The MDS Coordinator is identified as THCC employee Milaleel Ferrer ("MDS Coordinator Ferrer").  Pl. Dep. 108:2-3; Pl. 56.1, ¶ 11; Def. 56.1, ¶ 11.  In support of its summary judgment motion, Defendant produces two handwritten notes signed by Nurse Tabuzo and MDS Coordinator Ferrer and dated February 6, 2020, and January 31, 2020, respectively, reporting Plaintiff's negligence towards Patient Doe.  *See* ECF Nos. 31-6, 31-7.  Plaintiff denies that Nurse Tabuzo ever informed her of increased redness to Patient Doe's sacral area, but she does not deny that Nurse Tabuzo reported such an oversight to Nurse Mazzetti (only that he was "lying").  Pl. 56.1, ¶ 9.

Also on February 6, 2020, THCC held a mandatory training for all nursing staff about filing A&Is ("February 6 Training"), and Plaintiff did not attend.  ECF No. 31-4 ("Mazzetti Aff."), ¶ 10; HR Complaint.  Nurse Mazzetti attests that she was told by another employee, Maria Salvatore, that Ms. Salvatore had called Plaintiff multiple times and left several messages regarding the training but could not reach her.  *Id.*, ¶ 11.  Based on this information, Nurse Mazzetti attests that she believed

Plaintiff refused to come to the training despite their conversations about her compliance failures. *Id.*, ¶ 12.

The fourth report, on February 7, 2020, lists as its reason "Upon follow up on A&I completion of several residents are still incomplete [with] no mo/family notification. Including the following A&I RM (123.A) VS (room 102A). Poor performance & not meeting standards." DARs at 4. There is an "X" next to "written warning," and the date "2/10/20" follows "Discharged as of." *Id.* Nurse Mazzetti has signed alongside the date 2/27/20. *Id.* There is an Administrator or HR Acknowledgment signature as well as an "X" next to "N/A" for an employee's union notification request.

Plaintiff denies ever having seen the disciplinary reports. Pl. Dep. 93:12–96:9. Nurse Mazzetti testified that she did not herself present the second DAR to Plaintiff, but that someone from HRCC "ended up giving it to [Plaintiff]." Mazzetti Dep. 72:2–73:20. Nurse Mazzetti also testified that she did not remember presenting the third and fourth DARs to Plaintiff. *Id.* 81:1–82:1, 91:16-18, 92:4-8. Nurse Mazzetti further testified that presenting DARs to employees is designed to inform them of mistakes and allow them to improve. *Id.* 82:2-6.

Plaintiff testified that, on February 7, 2020, an aide told her, approximately, that Plaintiff was "fired and your replacement worked last night." Pl. Dep. 117:19-24. Defendant disputes this, claiming Plaintiff's replacement was not originally intended to have a full-time position, but she was offered one when Plaintiff was fired. THCC Position Statement, ¶ 7.

Plaintiff filed a Human Resources complaint dated February 8, 2020, against Nurse Mazzetti for "discrimination and exclusion." HR Complaint. Plaintiff outlines how she was approached by Nurse Mazzetti on January 30, 2020, and informed that she was not completing her A&I reports correctly. *Id.* She reports that she responded by saying she was performing them consistent with her training and that Nurse Mazzetti then informed her that she would hold a general training because other nurses were also not preparing them correctly. *Id.* Plaintiff complains that, before she received such training, she was disciplined for not thoroughly completing the A&I reports. *Id.* Plaintiff states that such discipline felt "unfair and pr[e]mature [for] not giving [her] the time or the training [she] needed to solve the problem considering [her and Nurse Mazzetti's] conversation [a] few days prior." *Id.* She also charges that she was "excluded" from the February 6 Training. *Id.* She further writes, "It also bothers me that I was treated so harshly, asked to give up my shift or position, been intimidated, threatened and left to feel incompetent; while current employees have had serious incidents as well as deadly results and they remain employed." *Id.* The HR Complaint concludes that "this letter . . . serves as a formal complaint of unfair treatment, harassment, discrimination[,] and exclusion." *Id.* The HR Complaint indicates "Rec'd 02/09/2020" with a signature below. *Id.*

On February 10, 2020, Nurse Mazzetti fired Plaintiff from her position at THCC. Mazzetti Aff., ¶ 13. Nurse Mazzetti attests that she did so because of reports from other staff members, Plaintiff's "fail[ure] to take responsibility for her

non-compliance" (instead, she insisted "staff members were lying about her"), and Plaintiff's failure to attend the mandatory February 6 Training.  *Id.*, ¶¶ 14-16.

Plaintiff attests that no one at THCC made a statement to her about her age, national origin, color, or race, or used discriminatory language about her while she worked at THCC.  Pl. Dep. 128:22–129:18.  In her deposition, she identifies three experiences of discrimination while employed there: her exclusion from the February 6 Training, Nurse Mazzetti's treatment of her, and her Filipino colleagues' lies about her.  *Id.* 129:22–131:2, 133:1–135:22, 140:11–141:13.  When asked about what protected characteristic she believes caused her to be excluded from the training, she says she does not know and that it could have been because someone did not like her.  *Id.* 131:12–132:25.  She believes that other African-American employees did attend the training.  *Id.* 131:3-6.  Additionally, she cites as discrimination Nurse Mazzetti "yelling and screaming at [her], treating [her] like [she] was incompetent" and "as if [she] do[es]n't know what [she's] doing."  *Id.* 133:1–135:22; *see also id.* 137:20-22 ("She did not give me a chance to perform under the guidance of her so-called education, which she did not give me.").  Finally, she cites "[a]ll of the Filipinos" as guilty of discrimination.  *Id.* 140:11-17.  Specifically, Plaintiff believed that Nurse Tabuzo and MDS Coordinator Ferrer, who are both Filipino, lied to Nurse Mazzetti in an effort to have Plaintiff terminated because "all Filipinos . . . lie" and "throw [non-Filipino] people under the bus."  *Id.* 103:17-104:15, 105:3-4, 112:11-22.

As to whether the employee who reported Plaintiff "wanted [her] out of the office because [Plaintiff was] not Filipino," Plaintiff's only evidence was her deposition testimony that: "I don't know what his motive was," *id.* 105:9-17, and "[a]ll of the Filipinos" discriminated against her and lied, *id.* 140:17–141:13; *see also id.* 104:11-15 ("[I]f you work in a job with a Filipino, and you're not a Filipino, you better have eyes in the back of your head and everywhere else, because they're going to . . . get rid of you and bring their Filipino friends in."). Plaintiff believes that Nurse Tabuzo and MDS Coordinator Ferrer's statements to Ms. Mazzetti contributed to the reasoning for her termination. *Id.* 112:20-113:1; Pl. 56.1, ¶ 12; Def. 56.1, ¶ 12.

## LEGAL STANDARDS

A grant of summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (citation omitted). The moving party has the burden of demonstrating "that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact"). In forming this assessment, the Court must view all "evidence in the light most

8

favorable to the [non-moving party]." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (citation omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  "[W]here the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied." *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003) (cleaned up).

The Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted). Ultimately, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### DISCUSSION

A.    **Federal Hostile Work Environment Claim Under Title VII and the ADEA**

"To establish a [federal] hostile work environment claim . . . a plaintiff must first produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the

9

conditions of the victim's employment." *Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 50-51 (2d Cir. 2025) (citation omitted); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (setting forth the standard for a hostile work environment claim under Title VII); *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 41 (2d Cir. 2019) ("the ADEA . . . language is virtually identical to that of Title VII").  As such, "a plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Knox*, 134 F.4th at 51 (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000)).  "If a rational jury could find either to be the case, then summary judgment must be denied."  *Id.*

"This assessment has both an objective and subjective component: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 262 (2d Cir. 2023) (cleaned up).  In contrast, "[c]onduct that is merely offensive and not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997) (cleaned up).  "Determining whether an actionable hostile environment claim exists requires an examination of all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

10

unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002).

Additionally, in order to establish a hostile work environment claim, a plaintiff must demonstrate that the conduct occurred because of a protected characteristic. *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). This does not mean that the harassing conduct must itself be based on a protected characteristic:

> Facially neutral incidents may be included, of course, among the totality of the circumstances that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on [the protected class]. But this requires some circumstantial or other basis for inferring that incidents [protected class]-neutral on their face were in fact discriminatory.

*Id.* at 378 (cleaned up). "Incidents, however abusive, that are not [protected class]-related are not relevant to establish a claim of a hostile work environment." *Borden v. City of New York*, No. 23-CV-8330 (RPK) (CLP), 2025 WL 754147, at *6 (E.D.N.Y. Mar. 10, 2025) (cleaned up); *see also Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("[A]n environment which is equally harsh . . . for both young and old does not constitute a hostile working environment under the [ADEA].").

The above-mentioned legal standard for evaluating a hostile work environment claim does not appear a single time in Defendant's papers supporting its motion for summary judgment, Plaintiff's opposition to that motion, or Defendant's Reply. *See generally* ECF No. 31 ("Mem."); ECF No. 34 ("Opp'n"); ECF No. 40. Instead, Defendant argues that Plaintiff's hostile work environment claim

should be dismissed because Plaintiff has not satisfied the familiar burden-shifting

framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973), for evaluating discriminatory treatment claims. *See, e.g.*, Mem. at 2. As

Plaintiff correctly points out, "the *McDonnell Douglas* test [does not] appl[y] to

hostile work environment harassment claims." Opp'n at 19-20 n.6.

Plaintiff appears to assume that, because Defendant cites the wrong legal

standard in support of its summary judgment motion, Plaintiff need not further

address Defendant's motion to dismiss her hostile work environment claim. The

entirety of Plaintiff's response to Defendant's motion for summary judgment as to

the hostile work environment claim is thus relegated to a single footnote. *See id.*[1]

Yet Defendant's reliance upon an inapplicable standard of review does not

moot out its otherwise properly-supported summary judgment motion. Defendant

has sufficiently established that no reasonable jury could conclude that any of the

actions taken against Plaintiff can be attributed to her race, age, color, or national

origin. *See* Mem. at 7-8. For example, it is undisputed that Plaintiff's supervisor

never said anything to Plaintiff about her race, age, color, or national origin. Pl.

---

[1] Given that the gravamen of Plaintiff's complaint is her termination, it is understandable that Defendant interpreted her complaint to potentially assert a disparate treatment claim. Yet Plaintiff disclaims any reliance on such a theory, reaffirming that she is not asserting "a discriminatory termination claim [as] a cause of action." Opp'n at 19 n.6. A termination can form part of a hostile work environment claim if "that discrete act was part of the ongoing, discriminatory practice that created a hostile work environment." *King v. Aramark Serv. Inc.*, 96 F.4th 546, 561 (2d Cir. 2024). Accordingly, while the Court may otherwise have been inclined to interpret Plaintiff's arguments as supporting a discriminatory treatment claim had both parties framed it as such, Plaintiff's express rejection of that claim militates against that approach.

56.1, ¶ 24.  There is no evidence in this record that any employee made derogatory comments regarding her race, age, color, or national origin.  All conduct invoked by Plaintiff is facially neutral.  There is no evidence from which an inference can be drawn that any of Defendant's actions were motivated by Plaintiff's race, age, national origin, or color.

Plaintiff points to her own testimony, in which she avers that she believes that she was subjected to racial discrimination.  *See* Pl. 56.1, ¶¶ 23, 31.  Yet "it is well established that a plaintiff's feelings and perceptions of being discriminated against are not evidence of discrimination."  *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 120 (S.D.N.Y. 2022) (cleaned up).  She also points to deficiencies in her disciplinary reports and inconsistencies in Defendant's reasoning for why she was fired.  Opp'n at 14-20.  Yet none of this is suggestive of racial, national origin, or age-related animus.  *See Petrisch v. HSBC Bank USA, Inc.*, No. 07-CV-3303 (KAM) (JMA), 2013 WL 1316712, at *14 (E.D.N.Y. Mar. 28, 2013) ("Even viewing the evidence in the light most favorable to the plaintiff, the record evidence and deposition testimony provide no support for an inference that the facially neutral conduct of Kourkoutis, Katz, and plaintiff's three female co-workers described above was motivated by plaintiff's age, sex, or national origin.").

As the Second Circuit has observed:

Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude.  It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.  Otherwise, the federal courts will become a court of personnel appeals.

13

*Alfano*, 294 F.3d at 377.  Plaintiff has failed to establish any such linkage.  Her federal hostile work environment claims are therefore dismissed.

**B.      NYSHRL Hostile Work Environment Claim**

"The NYSHRL historically utilized the same standard as Title VII, but it was amended in 2019 to align with the NYCHRL's more liberal pleading standard." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122-23 (2d Cir. 2024); *accord Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023). The October 11, 2019 amendments to the NYSHRL now require Plaintiff to demonstrate that she was subject to "inferior terms, conditions or privileges of employment because of [her] membership in one or more . . . protected categories" because of a protected characteristic.  N.Y. Exec. Law. § 296(1)(h).  Because "[t]his updated" standard is "more lenient" than the "severe or pervasive" standard, *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-CIV-02512 (CM), 2022 WL 524551, at \*9 (S.D.N.Y. Feb. 22, 2022) (citation omitted), Plaintiff's NYSHRL hostile work environment claim is no longer coextensive with federal law.

Yet section 296(h)(1) still requires that any harassment be attributable to Plaintiff's protected characteristics.  Plaintiff's NYSHRL hostile work environment claim therefore fails for the same reason as her federal law claims.

**C.      Retaliation Claims**

Plaintiff asserts retaliatory termination claims under both federal and state law.  ECF No. 1, ¶¶ 23-26.  Plaintiff claims she engaged in protected activity two days prior to her termination, when she filed a formal discrimination complaint

with the HR Department against Nurse Mazetti.  Opp'n at 12-14.  Because that HR

Complaint does not constitute protected activity under either federal law or the

NYSHRL, her retaliatory termination claims cannot proceed.

### 1.    Federal Retaliation Claims

At the summary judgment phase, retaliation claims are evaluated under the

three-step *McDonnell Douglas* burden-shifting framework.  *Hicks v. Baines*, 593

F.3d 159, 164 (2d Cir. 2010).  At step one, a plaintiff must make out a prima facie

case of retaliation by demonstrating: "(1) participation in a protected activity; (2)

that the defendant knew of the protected activity; (3) an adverse employment

action; and (4) a causal connection between the protected activity and the adverse

employment action." *Shultz v. Congregation Shearith Israel of City of New York*,

867 F.3d 298, 309 (2d Cir. 2017) (citation omitted).  "The plaintiff's burden in this

regard is '*de minimis,*' and 'the court's role in evaluating a summary judgment

request is to determine only whether proffered admissible evidence would be

sufficient to permit a rational finder of fact to infer a retaliatory motive.'" *Hicks*,

593 F.3d at 164 (citation omitted).

"If the plaintiff sustains this initial burden, a presumption of retaliation

 arises." *Id.* (cleaned up).  At step two, the defendant must "articulate a legitimate,

non-retaliatory reason for the adverse employment action." *Id.* (citation omitted).

If the defendant is successful, then the presumption of retaliation dissipates and the

employee must show that retaliation was a but-for cause of the adverse action, such

that the action would not have been taken in the absence of a retaliatory motive. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845-46 (2d Cir. 2013).

Plaintiff has not satisfied her burden at step one. A protected activity is an opposition to an employment practice made unlawful by the relevant statute. *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988); *see also Mitchell v. New York City Dep't of Educ.*, No. 24-992, 2025 WL 978366, at \*3 (2d Cir. Mar. 31, 2025) (summary order) ("The conduct of which the employee complains cannot violate 'just any law'—rather, it must violate the specific antidiscrimination statute under which the plaintiff seeks protection from retaliation." (citation omitted)). Thus, a protected activity for purposes of Title VII protests an act of discrimination based upon race, color, religion, sex, or national origin. *Manoharan*, 842 F.2d at 593.

Plaintiff argues that she engaged in protected activity when she filed the HR Complaint against Nurse Mazzetti. Opp'n at 12-14. It is true that the February 8 letter characterizes itself as "a formal complaint of discrimination and exclusion." HR Complaint. It also uses the words "harassment" and "unfair treatment." *Id.* But at no point in the HR Complaint does Plaintiff indicate a belief that such maltreatment was based on her age, sex, color, race, national origin, or any other protected characteristic. *See id.* Nor could a reasonable reader discern that she was protesting a discriminatory practice based on such a protected characteristic. *See id.* Plaintiff vaguely refers to being treated differently than unidentified others,

16

but does not specify who those other individuals are or what characteristics they might have.  *See id.*

A complaint does not constitute protected activity "if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory."  *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013) (per curiam) (holding that complaint that used terms "discrimination" and "harassment" did not constitute protected activity, where the conduct complained of could not reasonably be understood to violate Title VII).  Rather, "generalized" complaints without reference to a protected characteristic are not sufficient to put an employer on notice that a plaintiff "was complaining of conduct prohibited by Title VII."  *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (cleaned up).  While Plaintiff may have reasonably believed her treatment to be unfair, "[u]nfair treatment . . . is not actionable under the civil rights laws and a complaint about it does not constitute protected activity.  To be actionable, the unfair treatment must be due to one's membership in a protected class and the complaint must make that point sufficiently clear."  *Ramos v. City of New York*, No. 96-CV-3787 (DLC), 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997).

Although Plaintiff "did use certain buzzwords," her HR Complaint "said nothing that could be understood, even in context, to be about her [race, age,] gender[,] or other protected characteristics."  *Robinson v. De Niro*, 739 F. Supp. 3d 33, 104 (S.D.N.Y. 2023); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217

(RJS) (JLC), 2013 WL 6231615, at \*28 (S.D.N.Y. Dec. 2, 2013) (recommending granting summary judgment on NYCHRL claims because "[w]hile Farzan did tell Chan that he would file a discrimination complaint when told he would not be kept on at Wells Fargo, even in his own account of the conversation, he said nothing beyond this one remark that in context could be understood to have been about race or other protected classifications" (cleaned up)), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. Oct. 13, 2015) (summary order).  Indeed, "[a]bsent any express statements indicating that [Plaintiff] was" complaining of Nurse Mazzetti's conduct "because it was discriminatory based on her race," national origin, or age, Plaintiff's HR Complaint "could not have put Defendant[] on notice" that she believed Nurse Mazzetti to be discriminating against her on the basis of those protected characteristics, and so the complaint "is therefore not protected by the antiretaliation protections of Title VII." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 224 (E.D.N.Y. 2014); *see also Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (holding that plaintiff's complaints were not considered protected activity for purpose of gender discrimination claim because they "did not state that [plaintiff] viewed [supervisor's] actions as based on her gender, and there was nothing in her protests that could reasonably have led [employer] to understand that that was the nature of her objections").

Thus, Plaintiff did not engage in a protected activity that could form the basis of a retaliation claim under Title VII or the ADEA.

### 2. Retaliation Under the NYSHRL

Much like the updated standard for hostile work environment claims under the NYSHRL, the retaliation standard under the NYSHRL also eased in 2019 to better resemble the NYCHRL. N.Y. Exec. Law. § 296(7); *see Nezaj v. PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024). Still, the NYSHRL antiretaliation provisions also require that a plaintiff have "opposed any practices forbidden under this article." N.Y. Exec. Law. § 296(7); *see Diluglio v. Liberty Mut. Grp., Inc.*, 230 A.D.3d 643, 645-46 (2d Dep't 2024) (holding, on summary judgment, that "defendants met their burden of demonstrating that the plaintiff could not make out a prima facie case of retaliation by establishing that the plaintiff's complaints about Austin did not relate to discriminatory practices prohibited under the NYSHRL"). As Plaintiff did not identify a protected characteristic anywhere in her HR Complaint, nor otherwise intimate that any unfair treatment was related to a practice prohibited by the NYSHRL, that complaint cannot reasonably have served as a predicate for a NYSHRL retaliation claim.

### CONCLUSION

Accordingly, Defendant's motion for summary judgment is **GRANTED**.

The Clerk of Court is directed to terminate ECF Nos. 29 and 36 and close this case.

SO ORDERED.

Dated:  March 20, 2026
     New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge

19